UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MADELYN RODRIGUEZ,

    Plaintiff,　　　　　　　　　　　　　　Civil Action No. 08-11529

v.　　　　　　　　　　　　　　　　　　HON. DENISE PAGE HOOD
　　　　　　　　　　　　　　　　　　　U.S. District Judge
　　　　　　　　　　　　　　　　　　　HON. R. STEVEN WHALEN
COMMISSIONER OF SOCIAL　　　　　　　U.S. Magistrate Judge
SECURITY,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

Plaintiff brings this action under 42 U.S.C. §405(g) challenging a final decision of Defendant Commissioner denying her application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act. Both parties have filed summary judgment motions which have been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). I recommend that Defendant's Motion for Summary Judgment be DENIED and that Plaintiff's Motion for Summary Judgment be GRANTED, remanding the case to the administrative level for further proceedings consistent with Sections **B.** and **C.** of the analysis.

## PROCEDURAL HISTORY

On November 10, 2005, Plaintiff filed an application for SSI, alleging an onset date of January 1, 1999 (Tr. 63-65). After the initial denial of benefits on April 18, 2006, Plaintiff submitted a timely request for an administrative hearing, held in Oak Park, Michigan on September 17, 2007 (Tr. 57, 181). Administrative Law Judge ("ALJ") Daniel G. Berk presided (Tr. 183). Plaintiff, represented by attorney Kenneth Laritz, testified (Tr. 184-195),

as did Raymond Dulecki, a vocational expert ("VE") (Tr. 196-204). On October 24, 2007 ALJ Berk found that although Plaintiff was unable to perform her former jobs, she was capable of a significant range of other work (Tr. 28-29). On February 12, 2008, the Appeals Council denied review (Tr. 4-6). Plaintiff filed for judicial review of the final decision on April 9, 2008.

## BACKGROUND FACTS

Plaintiff, born June 5, 1961, was age 46 when the ALJ issued his decision (Tr. 30, 63). Plaintiff attained a GED and worked previously as a cashier (Tr. 78, 83). She alleges disability as a result of arthritis, hip displasia, migraine headaches, depression, and diabetes (Tr. 77).

### A.     Plaintiff's Testimony

Plaintiff, right-handed, testified that she lived in Clinton Township, Michigan (Tr. 184-185). She indicated that the youngest of her five children was just short of his 18th birthday (Tr. 185). She stated that she currently received food stamps and a $159 Workers' Compensation settlement payment each month (Tr. 185). Plaintiff reported receiving a GED in 1994 and later taking community college classes (Tr. 186).

Plaintiff testified that she worked from June to October, 1999 as a syringe inspector for a pharmaceutical company (Tr. 186-187). She also reported former jobs as a cashier and an assistant in a pharmacy as well as clerical work (Tr. 187). Plaintiff, indicating that she stopped working in October, 1999 after taking a workplace fall, opined that she was now unable to perform any full-time work (Tr. 188-189).

Plaintiff reported that she generally arose at 7 to 8:00 a.m. and retired at 11:00 p.m., indicating that she spent the daytime hours reading and sleeping (Tr. 189). She alleged an inability to stand for more than 15 minutes or sit for more than 35 (Tr. 190). She reported

that shooting neck pain, which caused left arm and shoulder discomfort, prevented her from turning her head to the left (Tr. 192). Plaintiff also reported that she had undergone a hip replacement, adding that neck and upper extremity limitations were exacerbated by knee and ankle swelling (Tr. 193). She stated that staying in one position too long worsened her neck problems and that standing for extended periods increased lower extremity swelling (Tr. 193). Plaintiff testified that she relieved the swelling by elevating her feet (Tr. 194).

Plaintiff reported taking medication for diabetes, stomach ailments, and sleep interruption (Tr. 194). She claimed that in a typical week, she experienced two "good," one "so-so," and four "bad" days (Tr. 195). Plaintiff testified that on good days, she experienced "a little more mobility"(Tr. 195).

### B. Medical Evidence

#### 1. Treating Sources

A September, 2004 discharge summary indicates that Plaintiff underwent a left hip arthroplasty, complicated by post-surgical infections and anemia (Tr. 114, 133-136). The report, noting a history of diabetes mellitus, genital herpes, arthritis, hypercholesterolemia, gastroesophageal reflux disease, and migraine headaches, states that following inpatient rehabilitation, Plaintiff was independent in upper extremity activities but "modified independent" in the lower extremity (Tr. 115). The following month, treating physician Sam Nasser, M.D. observed that Plaintiff could ambulate with a walker (Tr. 121).

January, 2005 treating notes by Dr. Luis Collazo, M.D. indicate that Plaintiff appeared alert and active (Tr. 158). In April, 2005, Dr. Nasser noted that Plaintiff did not bring a cane or walker to a followup appointment but reported that she continued to use a walker (Tr. 119). Plaintiff also reported that she experienced thigh cramps (Tr. 119).

A July, 2006 EEG showed "abnormally slow" results for Plaintiff's age (Tr. 165). An

August, 2006 myocardial perfusion scan showed a normal left ventricular ejection fraction exceeding 60 to 65 percent (Tr. 159). The same month, Dr. Collazo observing that Plaintiff was alert and active, noted the absence of dizziness or palpitations (Tr. 174). The following month, Dr. Collazo completed a "Medical Needs" form on behalf of the State of Michigan indicating that Plaintiff was capable of performing personal care activities, but experienced ongoing headaches; GERD; hyperlipidemia; cervical disk herniations and radiculopathy; and epilepsy (Tr. 160). In October, 2006, an EEG showed results within normal limits (Tr. 166). The same month, an MRI of the cervical spine showed a "mild" disc bulging at C3-4 and C4-C5 (Tr. 167). The imaging report also found "probable impingement of the exiting C5 nerve root on the left" (Tr. 167). In May, 2007, Dr. Collazo, noting the presence of cervical radiculopathy and epilepsy, found that Plaintiff was limited to lifting ten pounds and standing or walking less than two hours in an eight-hour workday (Tr. 171). Dr. Collazo also found that Plaintiff was incapable of sustained concentration (Tr. 171).

### 2. Consultive and Non-Examining Sources

In April, 2006, Psychologist Donald Tate noted that his ability to complete a Psychiatric Review Technique was thwarted by Plaintiff's failure to cooperate (Tr. 98).

### C. Vocational Expert

VE Raymond Dulecki classified Plaintiff's past relevant work as a syringe inspector as unskilled at the sedentary exertional level; cashier, semiskilled/light; and clerical work as sedentary/unskilled[1] (Tr. 200). He testified that skills acquired as a cashier could be

---

[1] 20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools; *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy* work "involves lifting no more than 100 pounds at a time with frequent

transferred to a cashier position at the sedentary level (Tr. 200). Taking into account Plaintiff's age, education, and work background, the ALJ posed the following hypothetical question:

> "[S]he would be able to perform work within a limited range of sedentary work, that is her capacity would be 8 rather than 10 pounds. That she would require a sit/stand option, and that she would be limited insofar as neck rotation to the left. Would she be able to perform any of her past relevant work?"

(Tr. 200). The VE testified that given the above limitations, Plaintiff would be able to perform her former part-time clerical position but would be unable to work as either a cashier (as previously performed) or inspector (Tr. 200). However, the VE, noting that Plaintiff retained transferrable skills for the exertionally light cashier position, found that 1,200 *sedentary* cashier's positions existing in Southeast Michigan (Tr. 201). The VE also found that given the above limitations, Plaintiff could perform the work of a visual inspector and hand packager (2,500), and service-related positions such as ticket taker, gate attendant, and lobby attendant (4,000) (Tr. 201). He testified that if Plaintiff's testimony were fully credited, she would be unable to perform any work due to the side effects of medication, concentrational problems, and need to elevate her legs more than 18 inches (Tr. 202-203). The VE reported that his testimony was consistent with the Dictionary of Occupational Titles (Tr. 202). In response to questioning by Plaintiff's counsel, the VE testified that both the hand packager and visual inspector positions had quota requirements (Tr. 204).

### D. The ALJ's Decision

Citing Plaintiff's medical records, the ALJ found that Plaintiff experienced the severe impairments of "left hip pain status post left hip arthroplasty, uncontrolled non-insulin

---

lifting or carrying of objects weighing up to 50 pounds.

dependent mellitus, mild circumferential disc bulging at C3-C4 with central canal stenosis, left-sided neural foraminal narrowing at C4-C5, hip degenerative joint disease, headaches, gastroesophageal reflux disease, new onset hypertension, herpes, hyperlipidemia, cervical disc herniation, cervical radiculopathy, and epilepsy" (Tr. 23). Nonetheless, he found that none of Plaintiff's severe impairments met or medically equaled "one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4" (Tr. 16). He determined that Plaintiff retained the residual functional capacity to perform sedentary work "where [s]he is required to lift eight pounds with a sit/stand option with limited neck rotation to the left" (Tr. 25). Adopting the VE's job numbers, the ALJ found that although Plaintiff was incapable of returning to her past relevant work, she could perform the work of a sedentary cashier, visual inspector, hand packer, ticket taker, gate attendant, and lobby attendant (Tr. 28, 29).

The ALJ found Plaintiff's allegations of physical and concentrational limitations "not entirely credible," noting that she continued to read and socialize for several hours each week (Tr. 27). The ALJ adopted Dr. Collazo's May, 2007 residual functional capacity assessment, but rejected the treating physician's conclusion that Plaintiff was disabled from all work (Tr. 28).

**STANDARD OF REVIEW**

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more than a scintilla but less that a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and

"presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc). In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §416.920(a). The Plaintiff has the burden of proof as steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## ANALYSIS

**A. Credibility**

Plaintiff argues first that the ALJ erroneously rejected her allegations of limitation, contending that "there are no inconsistencies" between Plaintiff's testimony and her medical records. *Plaintiff's Brief, Docket #10* at 11. She contends that her disability claim is supported by treating records, including documentation of cervical spine abnormalities, diabetes, and hip pain. *Id.* at 11-12.

An ALJ's "credibility determination must stand unless 'patently wrong in view of the cold record.'" *Anderson v. Bowen* 868 F.2d 921, 927 (7th Cir. 1989); *Imani v. Heckler,* 797 F.2d 508, 512 (7th Cir.1986). The credibility determination is guided by SSR 96-7p, which describes a two-step process for evaluating symptoms. *See Duncan v. Secretary of Health and Human Services,* 801 F.2d 847, 853 (6th Cir. 1986). "First, the adjudicator must consider whether there is an underlying medically determinable physical or mental impairment . . . that can be shown by medically acceptable clinical and laboratory diagnostic techniques." Second, SSR 96-7p mandates that "the adjudicator must evaluate the intensity, persistence, and limited effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities." *Id.*

C.F.R. 404.1529(c)(3), 416.929(c)(3) lists the factors to be considered in evaluating whether a claimant's symptoms are disabling:

> (i) Your daily activities; (ii) The location, duration, frequency, and intensity of your pain or other symptoms; (iii) Precipitating and aggravating factors; (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms; (v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms; (vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and (vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms."

Contrary to Plaintiff's argument, ALJ Berk adhered to the procedural and substantive requirements of SSR 96-7p, going so far as to discuss each of the above factors separately

(Tr. 27). The ALJ noted that Plaintiff's allegations of limitation were undermined by the fact that she arose before 8:00 a.m., read, watched television, prepared simple meals, and performed household chores (Tr. 26, 27). The ALJ commented that Plaintiff's testimony that she was obliged to elevate her feet frequently to the height of 18 inches stood unsupported by her medical records (Tr. 28). Although Plaintiff faults the ALJ for rejecting her allegations of concentrational deficiencies, in fact, the administrative opinion contains the finding that she experienced "moderate" deficiencies in concentration, persistence, or pace (Tr. 25). Accordingly, the latitude generally ceded to an ALJ's credibility determination is appropriate here. *Casey v. Secretary of Health and Human Services,* 987 F.2d 1230, 1234 (6th Cir. 1993); *see also Richardson, supra,* 402 U.S. at 401.

### B. Treating Physician Analysis

Next, Plaintiff argues that the ALJ's analysis of Dr. Collazo's May, 2007 disability opinion contains reversible error. *Plaintiff's Brief* at 12-13. Plaintiff notes that although the ALJ rejected Dr. Collazo's conclusion that she was disabled, he adopted the treating physician's findings pertaining to her residual functional capacity, concluding that "Dr. Collazo's [findings regarding] limitations are entitled to great weight but his opinion on the ultimate issue of disability is not entitled to any weight" *Plaintiff's Brief* at 13 (*citing* Tr. 28, 160, 171). Plaintiff points out that the while the ALJ's residual functional capacity adopts Dr. Collazo's assessment of her *exertional* capabilities, it omits any mention of the physician's accompanying finding that she experienced concentrational limitations. *Id.* (*citing* Tr. 171).

The uncontradicted opinions of treating physicians are entitled to complete deference. *Jones v. Secretary of Health and Human Services*, 945 F.2d 1365, 1370 (FN 7)(6th Cir. 1991). In the presence of contradictory evidence that would allow the ALJ to accord less than

controlling weight, the she must nonetheless consider the following factors: "the length of the . . . relationship and the frequency of examination, the nature and extent of the treatment, . . . [the] supportability of the opinion, consistency . . . with the record as a whole, and the specialization of the treating source." *Wilson v. Commissioner of Social Sec.* 378 F.3d 541, 544 (6th Cir. 2004)(*citing* 20 C.F.R. § 404.1527(d)(2)). An ALJ's failure to explain his reasons for rejecting a treating physician's opinion constitutes reversible error. *Wilson* at 546.

In the narrow sense, the ALJ's treating physician analysis adhered to the requirements of 20 C.F.R. § 404.1527(d)(2) by "giv[ing] good reasons" for rejecting Dr. Collazo's opinion that Plaintiff was disabled (Tr. 28). Actually, it is the portion of the treating physician's findings that were purportedly *adopted* by the ALJ ("Dr. Collazo's limitations are entitled to great weight") that is more problematic (Tr. 28). A reading of the treating physician analysis indicates that the ALJ "adopted" Dr. Collazo's findings that Plaintiff could stand or walk less than two hours in an eight hour day and had "problems with sustained concentration," stating that the physician's findings was "not inconsistent" with the ultimate residual functional capacity (Tr. 28).

A review of the residual functional capacity indicates that while the ALJ imposed even greater exertional limitations than the treating physician, the RFC omits any mention of Dr. Collazo's findings regarding Plaintiff's *concentrational* deficiencies (Tr. 25). While the ALJ purportedly accorded controlling weight to Dr. Collazo's findings, his failure to *apply* a significant portion of these findings to the ultimate residual functional capacity (or to the hypothetical question as discussed *infra*) amounts for all practical purposes to an unexplained rejection of the treating physician's opinion. Under *Wilson*, *supra*, 378 F.3d at 545, the ALJ's *de facto* rejection of the Dr. Collazo's opinion that Plaintiff experienced

concentrational limitations, by itself, mandates remand.

    **C. The Hypothetical Question**

On a related note, Plaintiff contends that the hypothetical question posed to the VE did not account for her full degree of limitation, thus invalidating the VE job findings. *Plaintiff's Brief* at 16-17 (*citing Varley v. Secretary of HHS*, 820 F.2d 777, 779 (6th Cir. 1987)). In particular, Plaintiff faults the ALJ for omitting mention of her need to keep her feet elevated while working as well as concentrational limitations. *Id.* at 17.

"Substantial evidence may be produced through reliance on the testimony of a vocational expert in response to a hypothetical question, but only if the question accurately portrays plaintiff's individual physical and mental impairments." *Varley, supra,* 820 F.2d at 779 (internal citations omitted).

First, as discussed in Section **A**, *supra*, the ALJ permissibly rejected Plaintiff's testimony that she needed to keep her feet elevated and was thus not required to include that limitation in his hypothetical question. "[T]he ALJ is not obliged to incorporate unsubstantiated complaints into his hypotheticals." *Stanley v. Secretary of Health and Human Services,* 39 F.3d 115,118-119 (6th Cir.1994); *Hardaway v. Secretary of Health & Human Servs.,* 823 F.2d 922, 927-28 (6th Cir.1987).

However, the ALJ's failure to incorporate Plaintiff's concentrational limitations constitutes error. While the ALJ was arguably permitted to reject Plaintiff's allegations that she experienced difficulty concentrating for extended periods, the administrative decision actually acknowledged moderate concentrational impairments. As discussed in Section **B**., *supra*, the ALJ "adopted" Dr. Collazo's finding regarding Plaintiff's concentrational difficulties (Tr. 28). More obviously, the administrative decision contains the explicit finding that Plaintiff "has moderate difficulties . . . [w]ith regard to concentration,

persistence, or pace" (Tr. 25).

The ALJ's failure to include his own finding of concentrational limitations when crafting the hypothetical question constitutes clear error. While the VE's job findings were limited almost exclusively to unskilled work, case law from this district and elsewhere suggests that generic limitations such as "unskilled work" fail to account for "moderate" concentrational and pacing deficiencies. *Benton v. Commissioner of Social Sec.* 511 F.Supp.2d 842, 849 (E.D.Mich.,2007)(Roberts, J.); *Edwards v. Barnhart,* 383 F.Supp.2d 920, 931 (E.D.Mich. 2005)(Friedman, J.); *Newton v. Chater,* 92 F.3d 688, 695 (8th Cir. 1996); *McGuire v. Apfel,* 1999 WL 426035, 15 (D. Or. 1999). Moreover, the need for clarification is particularly critical since the VE's job findings include the positions of visual inspector and hand packer, both of which have pacing and/or quota requirements, and may be precluded as a result of Plaintiff's moderate concentrational limitations (Tr. 204). *See Roe v. Chater,* 92 F.3d 672, 676-77 (8th Cir. 1996). For these reasons, as well as the overlapping reasons set forth in Section **B**, a remand is required.

However, because proof of disability is far from "overwhelming," these errors, while critical, do not automatically entitle Plaintiff to an award of benefits. *Faucher v. Secretary of Health and Human Services*, 17 F.3d 171, 176 (6th Cir. 1994). Instead, upon review, the ALJ should be required to explain his reasons for failing to apply Dr. Collazo's opinion regarding Plaintiff's concentrational limitations to the residual functional capacity. Further, pursuant to *Varley, supra,* because under the hypothetical question's omission of a key mental impairment invalidated the VE's job responses, the ALJ should amend his hypothetical question to reflect his own finding that Plaintiff experienced moderate limitations in concentration, persistence and pace**.**

## CONCLUSION

Accordingly, I recommend that Defendant's Motion for Summary Judgment be DENIED and that Plaintiff's Motion for Summary Judgment GRANTED, remanding the case to the administrative level for further proceedings consistent with Sections **B.** and **C.** of this Report and Recommendation.

Any objections to this Report and Recommendation must be filed within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/R. Steven Whalen
R. STEVEN WHALEN
UNITED STATES MAGISTRATE JUDGE

Dated: December 4, 2008

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served on the attorneys and/or parties of record by electronic means or U.S. Mail on December 4, 2008.

<pre>                                        s/Susan Jefferson
                                        Case Manager</pre>